873 P.2d 871

**Thomas A. NEAL, Plaintiff–
Counterdefendant–
Respondent,**

v.

**Mary NEAL, Defendant–Counterplaintiff–
Appellant,**

and

**Jill LaGASSE, Counterdefendant–
Respondent.**

No. 20770.

Supreme Court of Idaho.

April 22, 1994.

Marcus Merrick & Montgomery, Boise, for appellant. Craig Marcus, argued.

Ringert Clark Chtd., Boise, for respondent Thomas Neal. Jeffrey R. Christenson, argued.

Moffatt Thomas Barrett Rock & Fields, Chartered, Boise, for respondent LaGasse. Kirk R. Helvie, argued.

TROUT, Justice.

This is an appeal from an order dismissing appellant's action for damages allegedly suffered as a result of an adulterous relationship between her husband and his mistress. We consider herein the following issues: (1) whether Idaho law recognizes a cause of action for criminal conversation based upon an alleged right to an exclusive sexual relationship with a spouse; (2) whether a party may recover for mental anguish resulting from the fear of contracting a sexually transmitted disease where there is no allegation of exposure to such disease; and (3) whether the facts alleged are sufficient to state a prima facie claim of civil battery. We answer the first two questions in the negative and affirm the dismissal as to those causes of action. As to the third issue, we believe sufficient facts have been alleged and we remand for further proceedings.

## BACKGROUND

In January of 1990, defendant Thomas A. Neal filed for divorce after his wife became aware that he was having an extramarital affair. Mary Neal, his wife, counterclaimed for divorce and also asserted tort claims against Thomas Neal and Jill LaGasse. The gravamen of the claims against Thomas Neal and Jill LaGasse center upon allegations of an adulterous relationship between them.[1]

Respondents moved to dismiss under I.R.C.P. 12(b)(6). The trial court treated the motion as one for summary judgment as provided in I.R.C.P. 12(b) based on the submission by Thomas Neal of his affidavit and extracts of Mary Neal's deposition. Mary Neal did not file any brief in response to the

defendants' motions to dismiss. Following the district court's grant of the motions to dismiss, she filed a motion for reconsideration in which she extensively briefed her legal theories of recovery. Over objection by defendants, the district court accepted the brief and permitted oral argument. After reviewing the submissions and argument, the district court denied the motion to reconsider without further opinion. The Court of Appeals affirmed. Mary Neal petitioned for and was granted review by this Court.

## I.

### STANDARD OF REVIEW

When a case comes before this Court on a petition for review from an opinion of the Court of Appeals, "we do not focus on the opinion of the Court of Appeals, but rather on the decision of the district court." *Eastern Idaho Regional Medical Center v. Board of Comm'rs of Bonneville County, Idaho,* 122 Idaho 241, 244, 833 P.2d 99, 102 (1992). The district court's dismissal was in the form of a summary judgment and we therefore review it under standards applicable to a summary judgment. On appeal from an order granting summary judgment, we review the pleadings, depositions and admissions on file, together with the affidavits, if any, to determine whether there is a genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c); *Ray v. Nampa School Dist. No. 131,* 120 Idaho 117, 814 P.2d 17 (1991).

## II.

### RECOVERY FOR CRIMINAL CONVERSATION

Mary Neal seeks to recover for the respondents' adulterous conduct which she

---

1. Count I of Mary Neal's complaint involved issues solely related to her divorce petition. The district court bifurcated the action, remanding to the magistrate the issues pertaining to the divorce. Those matters were decided by the magistrate and are not before us on this appeal. Counts II and III against Thomas Neal and the third party complaint against LaGasse allege the causes of action considered here. Mary Neal's complaint is not a model of clarity. Both the district court and the Court of Appeals characterized her causes of action as: (1) tortious interfer-

ence with her marital contract, including a claim of criminal conversation (although that term was never used in the pleadings); (2) intentional or negligent infliction of emotional distress, including the fear of contracting a sexually transmitted disease; and (3) battery in the form of nonconsensual sexual intercourse. Because this characterization accurately describes what we believe to be Mary Neal's allegations, our resolution of the issues before us is made in terms thereof.

contends is actionable under tort theories of criminal conversation, invasion of privacy, interference with contract, violation of a statutory duty of fidelity and negligence. All of these causes of action are based, factually, on the alleged adulterous affair between Thomas Neal and Jill LaGasse. In addition, although Mary Neal alleged the various torts cited, the focus of her argument throughout this case has been on her claim of criminal conversation. For these reasons, our discussion here centers on the criminal conversation issue.

Mary Neal contends that criminal conversation remains a viable cause of action under Idaho law, thereby allowing her to maintain an action for interference with her exclusive sexual relationship with her husband. She further contends that this cause of action, based on her husband's adultery, is grounded in I.C. § 32–901, which provides that a spouse has a marital duty of mutual respect, fidelity and support, and I.C. § 18–6001, which provides a criminal penalty for adultery. We address these issues in turn.

*Black's Law Dictionary* 373 (6th ed. 1990), defines "criminal conversation" as

[s]exual intercourse of an outsider with husband or wife, or a breaking down of the covenant of fidelity. Tort action based on adultery, considered in its aspect of a civil injury to the husband or wife entitling him or her to damages; the tort of debauching or seducing of a wife or husband. . . .

Criminal conversation was recognized in Idaho as a common law tort in *Watkins v. Lord*, 31 Idaho 352, 171 P. 1133 (1918). It has its genesis in the proposition that a husband has a property right in his wife and her services. This property interest in his wife could be "stolen" by a third party through adultery. Since a wife was her husband's property and servant, her consent to the adultery was no defense to her husband's suit against her paramour. Prosser comments on the basis of criminal conversation from 8 Holdsworth, *History of English Law* 430 (2d ed. 1937), and states that "it was considered that she [the wife] was no more capable of giving a consent which would prejudice the husband's interest than would his horse." W. Prosser, *Law of Torts* § 124 at 875 (4th ed. 1971). This Court, and the courts of other states, have condemned this reasoning as archaic. *O'Neil v. Schuckardt*, 112 Idaho 472, 476, 733 P.2d 693, 697 (1986) (where this Court abolished the related cause of action of alienation of affections); *see also Irwin v. Coluccio*, 32 Wash.App. 510, 648 P.2d 458 (1982); *Funderman v. Mickelson*, 304 N.W.2d 790 (Iowa 1981).

Not since *Watkins v. Lord* was decided in 1918 has there been a reported case in Idaho involving criminal conversation. We believe that the change in societal views toward women which has occurred since then may have much to do with this total absence of case law. Here we take the opportunity presented us to hold that criminal conversation has been abolished as a cause of action in Idaho.[2]

The medieval rationale for the viability of the tort offers the very reason to abolish it. The notion that a wife is the property of her husband offends the right of every woman to be treated as an equal member of society. In abolishing criminal conversation we join a number of jurisdictions which have already done so. *See Irwin*, 648 P.2d at 460–461 (listing some eighteen jurisdictions which have abolished, legislatively or judicially, criminal conversation).[3]

**2.** This Court has not had the opportunity until now to reconsider the common law holding of *Watkins* since it was decided in 1918. Our decision herein, however, is not without precedent. In *O'Neil v. Schuckardt*, 112 Idaho 472, 733 P.2d 693 (1986), in which we abolished the cause of action for alienation of affections, we discussed the archaic premise of a cause of action based on the notion of women as chattels and traced the change of attitude which led this Court and others to abolish causes of action based thereon. Thus, although we have only now been presented with a case involving criminal conversation, we are satisfied that the premise for such a cause of action has been recognized as invalid for several years.

**3.** We also note that a claim of criminal conversation, were such to be valid, could not be asserted against the unfaithful spouse but is a claim brought against a third party. Here, Mary Neal purports to bring her criminal conversation claim against both her husband Thomas Neal and against Jill LaGasse. We find no support, and Mary Neal has not directed us to any, for her argument that a claim of criminal conversation

Mary Neal contends that the obligation of fidelity imposed by I.C. § 32–901 provides the basis for an actionable claim for damages for the invasion of her exclusive sexual relationship with her husband. We disagree.

Idaho Code § 32–901 is contained in the domestic relations title of the Idaho Code and provides that "[h]usband and wife contract toward each other obligations of mutual respect, fidelity and support." Chapter 9 covers the law of community and separate property. *Sheppard v. Sheppard*, 104 Idaho 1, 3, 655 P.2d 895, 897 (1982). The remedy for the breach of an obligation imposed in Chapter 9, including a breach of fidelity, is provided in the divorce statutes. The statute specifically provides that adultery—which surely could be considered a breach of the duty of fidelity—is grounds for divorce. *See* I.C. § 32–603. Further, the fault of one spouse, including engaging in adulterous conduct, is a factor which may be considered by the court in awarding maintenance. I.C. § 32–705. We hold, therefore, that divorce is the exclusive remedy for a breach of any duty imposed by I.C. § 32–901. We reject Mary Neal's argument that her civil tort claims are also available to recompense her for her husband's adultery.

Finally, we reject Mary Neal's contention that the adultery statute results in the codification of criminal conversation as a tort and that this Court cannot abolish the tort of criminal conversation absent legislative abolition of the crime of adultery. The existence of a criminal statute proscribing adultery seeks recompense for a public wrong. A civil action arises from the violation of a private right. The existence of the former does not prevent the elimination of the latter. *Lynn v. Shaw*, 620 P.2d 899, 903 n. 13 (Okla.1980) (where the court abolished criminal conversation, noting that criminal sanctions for adultery had not been abolished). In addition, the tort of criminal conversation has its origins in common law and this Court may modify such law. *See O'Neil*, 112 Idaho 472,

733 P.2d 693 (judicially abolishing the common law tort of alienation of affections).

While this Court does not condone adultery and continues to hold marriage in the highest esteem, we are persuaded, for the reasons given, that the action pursued by Mary Neal does not serve to protect the institution of marriage. To the contrary, as noted by this Court in a related context, "a marriage is not likely to falter without the active participation of one of its members." *O'Neil*, 112 Idaho at 477, 733 P.2d at 698. Further, once such cause of action is brought, it can only serve to add more tension to the family relationship.

There are other reasons to abolish the tort of criminal conversation. Revenge, which may be a motive for bringing the cause of action, has no place in determining the legal rights between two parties. Further, this type of suit may expose the defendant to the extortionate schemes of the plaintiff, since it could ruin the defendant's reputation. Deterrence is not achieved; the nature of the activities underlying criminal conversation, that is sexual activity, are not such that the risk of damages would likely be a deterrent. Finally, since the injuries suffered are intangible, damage awards are not governed by any true standards, making it more likely that they could result from passion or prejudice. *O'Neil*, 112 Idaho at 477, 733 P.2d at 698. These negative aspects, combined with the archaic basis for the tort, convince us that the ill effects of a suit for criminal conversation outweigh any benefit it may have.

Mary Neal's alternative theories of recovery all seek damages for the infringement of her claimed right to an exclusive sexual relationship. Because in abolishing criminal conversation we conclude that Idaho civil law does not afford a party a cause of action outside divorce, for adultery, we conclude that the district court correctly dismissed Mary Neal's other claims based on this alleged right.

---

may be asserted against Thomas Neal. *See also* W. Prosser, *Law of Torts* § 124 at 873 (4th ed. 1971) (noting that a claim for interference with familial relations was founded on the relation which the plaintiff had with third persons).

## III.

### RECOVERY FOR EMOTIONAL DISTRESS FROM FEAR OF CONTRACTING A SEXUALLY TRANSMITTED DISEASE

■ Independent of her attempt to recover for the interference with her marital relationship, Mary Neal seeks to recover from Thomas Neal, under theories of negligent and intentional infliction of emotional distress, for emotional distress resulting from the fear that she may have contracted a sexually transmitted disease. For purposes herein, we accept that Thomas Neal's sexual relationship with LaGasse subjected his wife to the risk of acquiring such diseases *if* carried by LaGasse. However, Mary Neal has not alleged that either Thomas Neal or LaGasse has any sexually transmitted disease nor has she alleged that she has in fact contracted any such disease. In fact, the record reveals that she does not have any such disease.

■ Damages are recoverable for emotional distress claims resulting from the present fear of developing a future disease only if the mental injury alleged is shown to be sufficiently genuine and the fear reasonable. We hold that there can be no reasonable fear of contracting such a disease absent proof of actual exposure. *See Carroll v. Sisters of St. Francis Health Services*, 1993 WL 532592 (Tenn.) (in order to recover emotional damages based on the fear of contracting AIDS, the plaintiff must prove, at a minimum, actual exposure to AIDS); *Burk v. Sage Products, Inc.*, 747 F.Supp. 285 (E.D.Pa.1990) (summary judgment granted for defendants where paramedic pricked with a discarded needle could not demonstrate that the needle had been used by an AIDS patient and paramedic had tested negative for HIV); *Funeral Services by Gregory, Inc. v. Bluefield Community Hosp.*, 186 W.Va. 424, 413 S.E.2d 79 (1991) (no recovery for mortician who embalmed an AIDS-infected corpse where he had worn protective gear and had not alleged any avenue of exposure); *Doe v. Doe*, 136 Misc.2d 1015, 519 N.Y.S.2d 595 (N.Y.Sup.Ct.1987) (no recovery to wife based upon husband's homosexual affair because

wife failed to allege that husband was infected with AIDS or that she had contracted it).

Because Mary Neal has not even alleged actual exposure to any sexually transmitted disease, she cannot satisfy the requirement of a reasonable fear to recover for emotional distress. Therefore, the district court properly dismissed her cause of action in this regard. We further conclude that because Mary Neal cannot satisfy the reasonable fear requirement for recovery for emotional distress, we do not consider whether she has satisfied the additional requirement that her fear be sufficiently genuine.

## IV.

### RECOVERY FOR BATTERY

■ Finally, Mary Neal contends that she has alleged a prima facie case of battery against Thomas Neal. Her battery claim is founded on her assertion that although she consented to sexual intercourse with her husband during the time of his affair, had she known of his sexual involvement with another woman, she would not have consented, as sexual relations under those circumstances would have been offensive to her. Therefore, she contends that his failure to disclose the fact of the affair rendered her consent ineffective and subjects him to liability for battery.

■ Civil battery consists of an intentional, unpermitted contact upon the person of another which is either unlawful, harmful or offensive. *White v. University of Idaho*, 118 Idaho 400, 797 P.2d 108 (1990). The intent necessary for battery is the intent to commit the act, not the intent to cause harm. *Id.* Further, lack of consent is also an essential element of battery. W. Prosser & W. Keeton, *The Law of Torts* § 9 at 41 and § 18 at 112 (5th ed. 1984). Consent obtained by fraud or misrepresentation vitiates the consent and can render the offending party liable for a battery. W. Prosser & W. Keeton, *The Law of Torts* § 18 at 119; *Bowman v. Home Life Insurance Co. of America*, 243 F.2d 331, 333 (3d Cir.1957).

The district court concluded that Thomas Neal's failure to disclose the fact of his sexu-

al relationship with LaGasse did not vitiate Mary Neal's consent to engage in sexual relations with him, such consent being measured at the time of the relations. We do not agree with the district court's reasoning. To accept that the consent, or lack thereof, must be measured by only those facts which are known to the parties at the time of the alleged battery would effectively destroy any exception for consent induced by fraud or deceit. Obviously if the fraud or deceit were known at the time of the occurrence, the "consented to" act would never occur.

Mary Neal's affidavit states that: "[I]f the undersigned had realized that her husband was having sexual intercourse with counter-defendant LaGasse, the undersigned would not have consented to sexual intercourse with counterdefendant Neal and to do so would have been offensive." The district court opined that because the act was not actually offensive at the time it occurred, her later statements that it would have been offensive were ineffective. This reasoning ignores the possibility that Mary Neal may have engaged in a sexual act based upon a substantial mistake concerning the nature of the contact or the harm to be expected from it, and that she did not become aware of the offensiveness until well after the act had occurred. Mary Neal's affidavit at least raises a genuine issue of material fact as to whether there was indeed consent to the alleged act of battery.

The district court also noted that Mary Neal's later sexual relations with her husband after becoming aware of his infidelity, extinguished any offensiveness or lack of consent. The fact that she may have consented to sexual relations on a later occasion cannot be said to negate, as a matter of law, an ineffective consent to prior sexual encounters. Again, her affidavit raises a question of fact regarding whether these prior sexual encounters were nonconsensual. This factual issue precluded the dismissal of the battery claim by the district court.

## V.

### CONCLUSION

For the reasons discussed herein, the district court's order of dismissal is affirmed as to all causes of action alleged against Jill LaGasse, and against Thomas Neal with the exception of the allegation of battery. As to that cause of action the case is remanded to the district court for further proceedings consistent herewith. Costs to respondents. No attorney fees on appeal.

BISTLINE and JOHNSON, JJ., and REINHARDT, J. Pro Tem., concur.

McDEVITT, C.J. concurs in I, III, IV and V, and concurs in the result in II.