In re Thomas A. GIONIS, M.D., Debtor.

Thomas A. GIONIS, M.D., Appellant,

v.

Aissa WAYNE, Appellee.

BAP No. CC 93–1616–KMeJ.
Bankruptcy No. SB 89–06878 DN.
Adv. No. SB 90–0393 DN.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted March 22, 1994.

Decided Sept. 9, 1994.

Catherine A. Vincent, Palm Springs, CA, for appellant.

Linda S. Carr, Santa Ana, CA, for appellee.

Before: KLEIN,[1] MEYERS, and JONES, Bankruptcy Judges.

## OPINION

KLEIN, Bankruptcy Judge:

This is an appeal from the bankruptcy court's judgment declaring that an award of attorney's fees and costs in a California marital dissolution proceeding constituted nondischargeable alimony, maintenance, or support under 11 U.S.C. § 523(a)(5).[2] We AFFIRM.

## JURISDICTION

Original subject-matter jurisdiction was founded on 28 U.S.C. § 1334(b). This was a "core proceeding" that the bankruptcy court was empowered to hear and determine. 28 U.S.C. § 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## STANDARD OF REVIEW

The bankruptcy court's findings of fact are not to be set aside unless clearly erroneous. Fed.R.Bankr.P. 8013; Fed.R.Civ.P. 52(a), incorporated by Fed.R.Bankr.P. 7052; *Vanderpark Properties, Inc. v. Buchbinder (In re Windmill Farms, Inc.)*, 841 F.2d 1467, 1469 (9th Cir.1988). We review questions of law

---

1. The Honorable Christopher M. Klein, United States Bankruptcy Judge for the Eastern District of California, sitting by designation.

2. 11 U.S.C. § 523(a)(5):
    (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

    . . . . .

    (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial

law by a governmental unit, or property settlement agreement, but not to the extent that—
    (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or
    (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support. . . .

de novo.[3] *Teichman v. Teichman (In re Teichman)*, 774 F.2d 1395, 1397 (9th Cir. 1985). To the extent that questions of fact cannot be separated from questions of law, we review them as mixed questions of law and fact applying a de novo standard. *Ratanasen v. California Dep't of Health Serv.*, 11 F.3d 1467, 1469 (9th Cir.1993).

## FACTS

This is an unusually unpleasant divorce. The facts for purposes of this appeal are straightforward.

Appellant Thomas A. Gionis, M.D. ("Gionis"), the debtor and defendant, is a surgeon with salary and "gross controllable cash flow" from business of $113,000 per month ($1,356,000 per year).

Appellee Aissa Wayne ("Wayne") receives income of $6,538 per month generated by a trust and related entities established by her father. She is not otherwise employed.

After a brief marriage that produced one child, Wayne petitioned for dissolution in a California Superior Court.[4] Gionis devoted more than $600,000 to professional fees and expenses in quest of custody of the child. Wayne spent approximately $185,000 contesting Gionis' onslaught.

The superior court ordered Gionis to pay Wayne $1,074,089 as even division of the community property and ordered Gionis to pay $185,000 directly to Wayne's attorneys for the professional fees and expenses she incurred in the custody wars.[5] The state court declined to award spousal support, reasoning that "[b]ased on the length of the marriage, the court finds that spousal support for either party is inappropriate."

The fees were awarded pursuant to California Civil Code § 4370, since reenacted as California Family Code § 2030. The state court based the award of professional fees on: (1) the need for the award in order to enable Wayne to have sufficient financial resources adequately to present her case;[6] and

---

3. We apply the de novo standard out of an abundance of caution and out of a desire to minimize the issues for further appeal in a litigation that appears to have (in the worst senses of the idiom) achieved a life of its own. We may, however, be applying too strict a standard. The more deferential abuse of discretion standard has been applied by the Ninth Circuit in two decisions, not latterly renounced, under section 523(a)(5) regarding dischargeability of debts imposed in connection with marital dissolutions. *Shaver v. Shaver (In re Shaver)*, 736 F.2d 1314, 1316 (9th Cir.1984); *Stout v. Prussel*, 691 F.2d 859, 861 (9th Cir.1982). Since we apply a more stringent standard, it follows that we would also affirm under an abuse of discretion standard.

4. *Gionis v. Gionis*, Case No. D–27–56–28, in the Superior Court of the State of California, County of Orange.

5. The court ordered Gionis to pay Wayne $20,000 per month until Wayne's attorney's fees were paid and $25,000 per month thereafter.

6. The state court's Memorandum of Intended Decision (prepared by the court) provided, in pertinent part:

Clearly the main issue in this case was custody of the minor child. Also clear to this Court is the fact that the Doctor was obsessed with obtaining custody of the minor at any price. Having the income to do it, he presented an excellent case to obtain custody and did receive custody of the minor. This Court feels

custody should have and could have been worked out between the parties. Aissa, having to defend this onslaught, needed to meet the spending dollar for dollar but without being in the same financial position of the Doctor. Remembering that the Doctor had control of the community assets during this time and spent over $600,000 in addition to his salary, it appears clear to this Court the Doctor did then and has presently the ability to pay a portion of Aissa's fees and costs.

Appellant's E.R. at 45.

Similarly, section 7(a) of the state court's subsequent Statement of Decision (prepared by counsel) provided, in pertinent part:

7. *Attorney Fees and Costs:*

A. *Factual Basis:*

The court makes the following findings of fact regarding this issue:

(1) Between the parties, fees and costs have exceeded $800,000.00, or approximately 40% of the entire community estate.

(2) Respondent [Gionis] was obsessed with obtaining custody of the minor child of the marriage.

(3) Custody should have and could have been worked out by the parties.

(4) Petitioner was not in the same financial position as respondent to litigate the issues in this case, since respondent had control of the community property assets of the parties during the pendency of the litigation.

(5) Respondent has the present ability to pay a portion of petitioner's fees and costs incurred in this litigation.

(2) Gionis' conduct of litigation that demonstrated his "obsess[ion] with obtaining custody of the minor child." [7]

The state court judgment was filed July 13, 1989. Gionis filed his chapter 7 bankruptcy petition August 22, 1989. Wayne did not contest dischargeability of the $1,074,089 equalizing payment that Gionis owed under the community property award, but did file a complaint, under section 523(a)(5), contesting the dischargeability of the debt owed pursuant to the award of professional fees.

The adversary proceeding was tried to the bench January 26, 1993. Post-trial briefs were submitted. Written findings of fact and conclusions of law were rendered in a Memorandum of Decision filed March 4, 1993, in which the bankruptcy court held that the $185,000 obligation constitutes "support" within the meaning of section 523(a)(5) and is not dischargeable. Judgment was entered March 19, 1993. Appellant's "motion for reconsideration," apparently made pursuant to Federal Rule of Civil Procedure 59, incorporated by Federal Rule of Bankruptcy Procedure 9023, was denied. This appeal ensued.

## DISCUSSION

We begin with a procedural matter that impacts the standard of review and then consider the merits of this appeal.

### I

■ The procedural point is that, in this instance, there was a *trial* in the bankruptcy court.

Its importance is that the bankruptcy court's findings of fact rendered pursuant to Rule 52(a), which is applicable in bankruptcy adversary proceedings,[8] are reviewed under a clearly erroneous standard. Both Rule 52(a) and Rule 8013, which applies generally to all bankruptcy appeals, specify that: "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." [9]

■ The unambiguous command of Rules 52(a) and 8013 compels us to reject Gionis' argument that, because the evidence was primarily documentary in the form of records from the state court, our review of the findings of fact should be as if the matter was decided on cross-motions for summary judgment, which we understand to mean de novo review of the trial court's factual findings. To accept Gionis' argument would be to eviscerate the function of the trial court to find facts following trial and would mean that the matter must be relitigated, in toto, at every level of appeal—both here and at the court of appeals. A trial is no less a trial merely because the parties elect to rely on documentary evidence.

Our review, however, is handicapped by the parties' failure to make the trial transcript part of the record on appeal, so that we do not know the exact manner in which evidence was received. Although the transcript was omitted from the appendix, it was conceded at oral argument of the appeal that there really was a trial. The appendix includes, inter alia, pretrial statements with witness lists, the documentary evidence admitted at trial, declarations submitted post-trial, and transcripts of oral argument on the motion for reconsideration.

■ The absence of the trial transcript, while a handicap, does not preclude us from

---

(6) As and for his contributive share of petitioner's legal and accounting expenses incurred in this matter, respondent shall pay directly to the LAW OFFICES OF E. ROBERT LEMKIN, INC., fees in the amount of $175,-000.00, and costs advanced in the amount of $10,000.00.
Appellant's E.R. at 53–54.

7. Wayne received temporary sole custody of the minor child on March 29, 1988. Gionis was granted temporary sole physical custody in December of 1988. Temporary sole physical custody returned to Wayne from April 1989 until December 8, 1992, at which time the parties stipulated that Wayne would receive permanent sole physical custody. Appellant's E.R. at 29.

8. Federal Rule of Bankruptcy Procedure 7052 provides: "Rule 52 F.R.Civ.P. applies in adversary proceedings."

9. Rule 8013 substitutes "bankruptcy" for "trial" and omits the first "of" from the phrase "to judge of the credibility of the witnesses."

deciding the appeal. Gionis chose to omit the transcript. The burden is on him, as appellant, to demonstrate that the findings of fact were clearly erroneous. *Ashley v. Church (In re Ashley)*, 903 F.2d 599, 603 (9th Cir.1990); *United States v. Mills*, 597 F.2d 693, 698 (9th Cir.1979); *Burkhart v. Federal Deposit Ins. Corp. (In re Burkhart)*, 84 B.R. 658, 660 (9th Cir. BAP 1988). We are entitled to presume that he does not think the trial transcript helpful in that regard.

## II

■ The ultimate issue on the merits, whether a state court's award of $185,000 in connection with a marital dissolution constitutes nondischargeable alimony, maintenance, or support, is a question of federal law with respect to which the labels that were applied under state law are not binding. Federal courts must look behind the state court's award and make a factual inquiry to determine whether the award is actually in the nature of support. *Shaver*, 736 F.2d at 1316; *Stout*, 691 F.2d at 861 (citing H.R.Rep. No. 595, 95th Cong., 2d Sess., 364, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 6320).

## A

■ First, the facts, which are reviewed on a clearly erroneous standard.

The bankruptcy court found that "a 'severe disparity' existed between the income of Gionis and Wayne." Appellant's E.R. at 165 n. 5.

> Wayne enjoys sufficient income to sustain herself indefinitely. In light of the extraordinary income of the Debtor, however, Wayne's ready resources were quickly overwhelmed when divorce proceedings commenced. The imbalance resulted in an award to Wayne in order to sustain her

side in the divorce action and resist the "onslaught" by Gionis.

Appellant's E.R. at 167.

In addition, the bankruptcy court found that the state court actually premised its award on need and that it "specifically awarded attorney fees based on an imbalance in the relative income of the parties." Appellant's E.R. at 165.

To be sure, the statute on which the award was made requires the state court to consider two factors: the need for an award so as to enable the parties adequately to present their cases and the extent to which the parties were unnecessarily litigious. Specifically, in making an award under California Civil Code § 4370,[10] the court is required, by California Civil Code § 4370.5, to limit the amount to what is "just and reasonable under the circumstances of the respective parties" and must take two factors into account:

> (b) In determining what is just and reasonable under the circumstances, the court shall take into consideration both of the following:
>
> (1) The need for the award to enable each party, to the extent practical, to have sufficient financial resources to adequately present his or her case, taking into consideration to the extent relevant the *circumstances of the respective parties described in subdivision (a) of Section 4801.*
>
> (2) The extent to which the conduct of each party and the attorney furthers or frustrates the policy of the law to promote settlement of litigation, and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys.

Cal.Civil Code § 4370.5 (West 1989), *repealed by* Stat.1992, c. 162 (A.B. 2650), § 3, operative Jan. 1, 1994.

Gionis argues that the mere existence of the second mandatory factor necessarily im-

---

**10.** Section 4370 provides, in pertinent part: During the pendency of any proceeding under this part, the court may order any party, except a governmental entity, to pay such amount as may be reasonably necessary for the cost of maintaining or defending the proceeding and for attorneys' fees....

Cal.Civil Code § 4370(a), *repealed by* Stat.1992, c. 162 (A.B. 2650), § 3, operative Jan. 1, 1994. *See,* now, Cal.Family Code §§ 270, 271, 273 (West 1994).

plies that the $185,000 award was imposed as a sanction for obstinance and, hence, was dischargeable. The bankruptcy court, however, considered the following statement by the state court:

> Clearly the main issue in this case was custody of the minor child. Also clear to this Court is the fact that the Doctor was obsessed with obtaining custody of the minor at any price. Having the income to do it, he presented an excellent case to obtain custody and did receive custody of the minor. This Court feels custody should have and could have been worked out between the parties. Aissa, having to defend this onslaught, needed to meet the spending dollar for dollar but without being in the same financial position of the [Doctor]. Remembering that the Doctor had control of the community assets during this time and spent over $600,000 in addition to his salary, it appears clear to this Court the Doctor did then and has presently the ability to pay a portion of Aissa's fees and costs.

Appellant's E.R. at 165 n. 4.

The sole reference to the litigiousness factor of the requisite analysis is the state court's statement that it "feels custody should have and could have been worked out between the parties." The bankruptcy court, in effect, concluded that this mild statement, in the context of much stronger language about unbalanced financial resources, reflected a court that was paying lip service to an essential element and that the dominant factor was Wayne's need for funds to put up a defense.

We cannot say that these findings of fact are clearly erroneous. They were rationally based on evidence before the bankruptcy court. The bankruptcy court had a more complete record before it and was in a better position to assess the parties.

### B

■ Next the law. What constitutes support within the meaning of section 523(a)(5) implicates a number of factors that are potentially relevant on a case-by-case basis to this federal question.

■ Need is one important factor. "Support payments tend to mirror the recipient spouse's need for support." *Shaver,* 736 F.2d at 1317.

■ Where the award was rendered in a contested proceeding, another relevant fact is the intent of the state court. *Shaver,* 736 F.2d at 1316. *See also Adams v. Zentz,* 963 F.2d 197, 200 n. 6 (8th Cir.1992). The bankruptcy court may look to state law in determining whether the state court intended to base the award on need. *Gard v. Gibson (In re Gibson),* 103 B.R. 218, 220 (9th Cir. BAP 1989) (citing *Spong v. Pauley (In re Spong),* 661 F.2d 6, 8–9 (2nd Cir.1981)).

■ If there is (1) an absence of support payments in the decree, then (2) the presence of minor children in the marriage and (3) a disparity of income between the parties may serve as indicia of need. Other "[f]actors indicating that support is necessary include the presence of minor children and an imbalance in the relative income of the parties." *Shaver,* 736 F.2d at 1316 (citing *In re Woods,* 561 F.2d 27, 30 (7th Cir.1977)).

■ While a bankruptcy court may consider other factors, these are the primary ones that inform the inquiry in this case.

### 1. *Denial of "Spousal Support".*

■ Gionis places great weight on the state court's statement in its Memorandum of Decision that: "Based on the length of the marriage, the Court denies spousal support to either party." Appellant's E.R. at 45. He argues that the denial of spousal support, as a matter of law, precludes the bankruptcy court from concluding that the $185,000 award was support.

■ The major flaw in Gionis' argument is that, as noted above, the state court's labels do not control the federal question. Rather, the state court's statement is mere evidence to be received with all the other evidence in the case. Moreover, the denial of spousal support would not preclude the possibility that the fee award was some *other* form

of support.[11] Here, the bankruptcy court carefully considered that evidence and declined to accord it dispositive weight. Appellant's E.R. at 167. We agree.

▇▇ If the denial of "spousal support" is not dispositive, then Gionis asks that we muster our courage to use this occasion to recognize and announce that under federal law there is a "rebuttable presumption" that there is no support whenever a state court has declined to award support. To do so, however, would be mere mock-heroics. The rebuttable presumption is already present in the form of the plaintiff's burden of persuasion according to which Wayne is required to prove by a preponderance of the evidence that the $185,000 award was support. That is, of course, precisely what the bankruptcy court concluded she had done.

### 2. Distribution of Community Property.

▇▇ Gionis also argues that the $185,000 award had features of a property settlement intended to equalize distribution of community property, which would indicate that the debt is not support and is therefore dischargeable. In *Stout*, the court held dischargeable an obligation requiring the debtor-defendant to hold the plaintiff harmless where the provision began with the words "to equalize the division of community property." *Stout*, 691 F.2d at 861. In this case, the state court awarded an equalizing payment of $1,074,089 expressly with respect to the division of community property, which award is not in controversy in this appeal.[12] The $185,000 award now before us was not part of the division of community property and was not accompanied by the type of language used in *Stout*.

▇▇ Gionis argues, nevertheless, that the $185,000 award reflects an additional equalization of community property because Gionis spent funds from community property on the custody battle. The bankruptcy court acknowledged this evidence, considered it, and determined that it did not tip the scale in Gionis' favor. We cannot say that the bankruptcy court was incorrect.

### 3. Presence of a Minor Child.

▇▇ The presence of a minor child is an indication that the state court intended the award to be in the nature of alimony, maintenance, or support. *Shaver*, 736 F.2d at 1316 (citing *Woods*, 561 F.2d at 30). The dissolution proceeding focused on the custody and the welfare of the minor child who was in Wayne's custody when the award was made. The bankruptcy court took into account the presence of the minor child in its decision. Such evidence supported the conclusion that the award constituted spousal or child support. It was not error to consider the evidence.

### 4. Disparity in Income between the Parties.

▇▇ Another factor is that a relative imbalance of the income or wealth of the parties may also indicate that the award constitutes "support" for purposes of section 523(a)(5). *Shaver*, 736 F.2d at 1316. It is uncontested that there is a large imbalance in income in favor of Gionis. Wayne's monthly gross income was $6,538 and Gionis' monthly gross controllable cash flow was $113,300. The state court held that the disparity was sufficient to create an imbalance in the abilities of the parties to contest the custody of the minor child where Gionis elected to wage a $600,000 campaign for custody.

Gionis now contends that the bankruptcy court must conclude that Wayne is actually in need before concluding that the $185,000 award is nondischargeable in bankruptcy and relies upon *Gibson*.

▇▇ "Need" is relative and contextual.[13] An examination of the record reflects that

---

11. As the award was based upon custody battles in which an important issue is ordinarily the welfare of the child, it would not be difficult to characterize it as child support.

12. The state court ruled: "In order to equalize the division of community property, Doctor shall pay to Aissa the sum of $1,074,089." Appellant's E.R. at 40.

13. The pertinent context is the devastating effect on Wayne's stream of income that she used to support herself. Support awards generally provide for an income stream; here the award can

the bankruptcy court did take need into account in rendering the decision below, and it reflects that the bankruptcy court carefully considered the *Gibson* decision:

> Admittedly, it will probably be a rare occurrence when an individual must pay attorney fees but not monthly spousal support. Nevertheless, the facts of this case seem perfectly suited for just such a result. Due to the foresight of her father, Wayne enjoys sufficient income to sustain herself indefinitely. In light of the extraordinary income of the Debtor, however, Wayne's ready resources were quickly overwhelmed when divorce proceedings commenced. The imbalance resulted in an award to Wayne in order to sustain her side in the divorce action and resist the "onslaught" by Gionis. Such an award falls squarely within the standard elucidated in *Gibson* and is nondischargeable.

Appellant's E.R. at 167.

We agree with the bankruptcy court.

### CONCLUSION

The bankruptcy court did not commit error in determining that the state court's award of professional fees was nondischargeable. The facts that were determined were not clearly erroneous. The bankruptcy court's application of the law to the facts was correct.

The judgment of the bankruptcy court is AFFIRMED.

be viewed as providing for the preservation of an income stream. If Wayne were required to pay the professional fees, it would have destroyed the income stream that she derived from the trust. If Wayne's entire $6,538 income were to be devoted to paying the $185,000, it would have taken her more than twenty-eight months to pay off the obligation, during which time she would have no income at all and manifestly would need support.