In re Thomas A. NEAL and
Jill D. Neal, Debtors.

Mary HAINLINE, Plaintiff,

v.

Thomas A. NEAL, Defendant.

Bankruptcy No. 94–01368.
Adv. No. 94–6321.

United States Bankruptcy Court,
D. Idaho.

March 6, 1995.

Craig Marcus, Marcus, Merrick & Montgomery, Boise, ID, for plaintiff.

Carolyn Justh, Brown & Justh, Coeur d'Alene, ID, for defendant.

## MEMORANDUM OF DECISION

ALFRED C. HAGAN, Bankruptcy Judge.

Presently before the Court is Mary Hainline's complaint to determine non-dischargeability of debt. Trial in this matter was held on January 26, 1995. The plaintiff's case in chief consists of thirty-five documents from her state court battery action and her divorce action. Defendant-debtor, Thomas Neal presented his own testimony and that of Dr. William Harlow Miller. The defendant submitted as evidence an additional ten documents from the state court proceedings.

### FINDINGS OF FACT

Creditor, Mary Hainline, formerly known as Mary Neal ("Hainline"), was married to debtor Thomas Neal ("Neal") for approximately six years. During their marriage, Neal attended medical school while Hainline provided the couple's primary support. Toward the end of their marriage, Neal became romantically involved and had an affair with his current wife, co-debtor Jill Neal, then known as Jill LaGasse ("LaGasse").

Neal filed an action for divorce in the Magistrate Court for the Fourth Judicial District of the State of Idaho, in and for the County of Ada (the "magistrate court"). Hainline filed a counter-claim for support, and various tort claims arising out of Neal's affair. The proceeding was subsequently bifurcated. The divorce proceeding including property division, alimony, child custody and child support (the "divorce proceeding"), re-

mained in the magistrate court. Hainline's tort claims (the "tort proceeding") were removed to the Fourth Judicial District Court in and for the County of Ada (the "district court").[1]

In the divorce proceeding, the magistrate court denied Hainline's request for alimony but awarded her $600.00 per month plus medical expenses for the support of the parties' minor child. In addition, the magistrate awarded Hainline $25,763.02 as compensation for Hainline's support of Neal during medical school. The magistrate court identified this award as one of "equitable restitution". The court required both parties to pay for their own attorney's fees.

The debtors filed a motion to dismiss in the tort proceeding. The district court considered the evidence submitted by the parties and otherwise treated the motion as one for summary judgment. The district court dismissed all of Hainline's tort claims. Hainline appealed and the Idaho Supreme Court affirmed the dismissal of all of the tort claims except her claim for battery in the form of non-consensual sexual intercourse.

The debtors filed their petition for voluntary relief pursuant to Chapter 7 of Title 11 of the United States Code on June 2, 1994, before either party had submitted briefs to the Idaho Supreme Court. In their schedules, the debtors list Hainline's claim for equitable restitution as liquidated and uncontested.

On November 2, 1994, this Court granted Hainline relief from stay to pursue her battery claim in state court and retained the dischargeability issues. The battery claim is as yet undecided.

Hainline filed this adversary proceeding to determine the dischargeability of both her battery claim and her claim for equitable restitution. Because of the state court proceedings a determination by this Court of Neal's liability under state law, or the amount of his liability on either the sexual battery or the equitable restitution claim is not at issue here.

**1.** *See Neal v. Neal*, Case No. 12626–D, District Court of the Fourth Judicial District of The State

*CONCLUSIONS OF LAW*

A. Sexual Battery

Hainline contends any award she receives from her sexual battery claim is not dischargeable under Code section 523(a)(6):

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> \* \* \* \* \* \*
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6).

With regard to section 523(a)(6) the Ninth Circuit Court of Appeals has held:

> An injury to an entity or property may be a malicious injury within this provision if it was wrongful and without just cause or [excuse] [*sic.*], even in the absence of personal hatred, spite, or ill-will. The word 'willful' means 'deliberate or intentional,' a deliberate and intentional act which necessarily leads to injury. Therefore, a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury.

*Impulsora del Territorio Sur, S.A. v. Cecchini (In re Cecchini)*, 780 F.2d 1440, 1443 (9th Cir.1986), *quoting,* 3 Collier on Bankruptcy § 523.16 at 523–118 (15th ed. 1983).

Hainline has not yet received a verdict on her battery claim. Further, although she has presented the affidavits and depositions submitted to the magistrate court in opposition to Neal's motion to dismiss the tort proceeding, this evidence sheds little, if any, light on whether Neal's actions were malicious as defined by the Ninth Circuit Court of Appeals. She has not presented this Court with any new evidence specifically relating to whether the alleged battery was malicious within the meaning of § 523(a)(5). Thus, this Court must determine whether proof of the elements of her tort claim in

of Idaho in and for the County of Ada.

state court will automatically prove the alleged battery was wilful and malicious.

Hainline's battery claim is founded on the theory that although she consented to sexual intercourse with Neal during the time of his affair, had she known of his sexual involvement with LaGasse, she would not have consented as sexual relations under those circumstances would have been offensive to her. The Supreme Court of the State of Idaho has ruled that her allegations state a cause of action for sexual battery.

> Civil battery consists of an intentional, unpermitted contact upon the person of another, which is either unlawful, harmful, or offensive. *White v. University of Idaho,* 118 Idaho 400, 797 P.2d 108 (1990). The intent necessary for battery is the intent to commit the act, not the intent to cause harm. *Id.* Further, lack of consent is also an essential element of battery. *W. Prosser & W. Keeton, The Law of Torts* § 9 at 41 and § 18 at 112 (5th ed. 1984). Consent obtained by fraud or misrepresentation vitiates the consent and can render the offending party liable for a battery. *W. Prosser & W. Keeton, The Law of Torts* § 18 at 119; *Bowman v. Home Life Insurance Co. of America,* 243 F.2d 331, 333 (3d Cir.1957).
>
> The district court concluded that Thomas Neal's failure to disclose the fact of his sexual relationship with LaGasse did not vitiate Mary Neal's consent to engage in sexual relations with him, such consent being measured at the time of the relations. We do not agree with the district court's reasoning. To accept that the consent, or lack thereof, must be measured by only those facts which are known to the parties at the time of the alleged battery would effectively destroy any exception for consent induced by fraud or deceit....

*Neal v. Neal,* 125 Idaho 617, 622–23, 873 P.2d 871, 876–71.

In so holding, the Idaho Supreme Court did not hold that Neal's failure to inform Hainline of his affair before have sexual relations with her necessarily constituted fraud:

> Mary Neal's affidavit states that: "[I]f the undersigned had realized that her husband was having sexual intercourse with counterdefendant LaGasse, the undersigned would not have consented to sexual intercourse with counterdefendant Neal and to do so would have been offensive.... [Thus], Mary Neal may have engaged in a sexual act based upon a substantial mistake concerning the nature of the contact or the harm to be expected from it, and that she did not become aware of the offensiveness until after the act had occurred. Mary Neal's affidavit at least raises a genuine issue of material fact as to whether there was indeed consent to the alleged act of battery.
>
> The district court also noted that Mary Neal's later sexual relations with her husband after becoming aware of his infidelity, extinguished any offensiveness or lack of consent. The fact that she may have consented to sexual relations on a later occasion cannot be said to negate, as a matter of law, an ineffective consent to prior sexual encounters. Again, her affidavit raises a question of fact regarding whether these prior sexual encounters were nonconsensual. This factual issue precluded the dismissal of the battery claim by the district court.

*Neal v. Neal,* 125 Idaho at 623, 873 P.2d at 877.

Thus whether Hainline's consent to sexual intercourse with Neal was the result of a substantial mistake on Hainline's part remains a question of fact despite Neal's admission to having intercourse with Hainline without first informing Hainline of his infidelity.

In determining whether proof of Hainline's sexual battery claim necessary constitutes proof that the claim is nondischargeable, it is emphasized it was Neal's act of having sexual intercourse with Hainline without first informing her of his infidelity, and not the infidelity that constitutes the alleged tort.

 The word "willful" means "deliberate or intentional." *In re Cecchini,* 780 F.2d 1440, 1443 (9th Cir.1986), *quoting,* 3 Collier on Bankruptcy § 523.16 at 523–118 (15th ed. 1983); *Transamerica Commercial Finance Corporation v. Littleton (In re Littleton),* 942 F.2d 551, 554 (9th Cir.1991). Sexual battery

requires actual intent to perform the offensive act. If Hainline prevails in her tort action she will necessarily also have proven that Neal's action was "wilful." Therefore, if Hainline prevails in her tort action she will also necessarily have shown that Neal's action was wilful.

■ The next question is whether Neal's action was malicious. A malicious act is one that would "necessarily produce[ ] harm" and is "without justification or excuse." *Gee v. Hammond (In re Gee)*, 173 B.R. 189, 192 (9th Cir. BAP 1994).

> The phrase "necessarily produced harm" has been interpreted to mean that the 'act must be targeted at the creditor, at least in the sense that the act is certain or almost certain to cause financial harm.' *In re Littleton*, 942 F.2d at 555 ... The Ninth Circuit further refined its definition of malice by ruling that a creditor must show that the debtor had actual knowledge or the reasonable foreseeability that his conduct might result in injury to the creditor. [citation omitted].

*In re Gee*, 173 B.R. at 192 (applying *In re Littleton* standard to sexual harassment case).

In *McCelvey v. Fulgham (In re Fulgham)*, 70 B.R. 168 (Bankr.D.N.M.1986), the bankruptcy court applied this principle to an action for battery. In *Fulgham*, the plaintiff had already obtained an award of damages for battery in federal district court. At trial the plaintiff relied on the documents of record in the district court case. The bankruptcy court found that the documents presented were insufficient to prove the battery was malicious because: "Although the jury's verdict necessarily indicates that defendant intentionally acted to make a harmful or offensive contact, neither of these types of contacts by their definition in the jury instructions ... mandates that the defendant's contact be one which 'necessarily causes injury.'" *Id.* at 170. Accordingly, the court held that plaintiff had failed to prove the defendant's actions were malicious.

■ The elements of a sexual battery as defined by the Idaho Supreme Court do not include a requirement that the defendant's

action have "necessarily caused injury" to the plaintiff. Neal testified that from the time he began his affair with LaGasse until his wife discovered the affair, he was still uncertain as to whether he wished to end his marriage with Hainline. It was not until sometime after Hainline and Neal separated that Neal finally determined that he wished to end the marriage and marry LaGasse.

Dr. William Harlow Miller, a medical psychiatrist testified that the discovery of an extra-marital affair, separation, and divorce proceedings are all likely to produce severe emotional distress. He also testified that because of the strain on a marriage caused by an affair he would not have advised Neal to tell Hainline about the affair unless Neal was certain he wanted to end the marriage. Nor would he have advised Neal to terminate sexual relations with Hainline after beginning his affair with LaGasse because the sudden unexplained termination of sexual relations in a marriage can be as devastating as the discovery of an extra marital affair.

Dr. Miller also testified the discovery by a spouse that the other spouse continued to have marital sexual relations while having an affair is relatively unlikely to produce as severe emotional distress as compared to the emotional distress attributable to either divorce proceedings or the discovery of the extra-marital affair itself.

In *Littleton*, 942 F.2d at 554, the court found that acts of financial fraud does not always necessarily cause harm. In *Littleton*, the debtors were the officers, directors and shareholders of Jacob's Appliance and TV, Inc. ("Jacob's"). Jacob's gave the creditor a security interest in its inventory and the proceeds thereof. When Jacob's fell upon hard times the debtors attempted to keep it afloat by applying the proceeds from the sale of the inventory to other debts. "The bankruptcy court ruled that in light of the debtors good faith and sincere intentions to keep the business going, their actions were not ones that would necessarily produce harm." *Littleton*, 942 F.2d at 551. The Bankruptcy Appellate Panel and the Ninth Circuit affirmed. Here, Neal was unsure whether he would continue his marriage with Hainline, therefore, at the time his action took place, it

was unclear whether Hainline would be harmed.

In response, Hainline cites *Dorer v. Moberg (In re Moberg),* 156 B.R. 810 (Bankr. D.Minn.1993). In *Moberg,* the plaintiff also alleged sexual battery. The bankruptcy court concluded that damages stemming from the battery were non-dischargeable because, "he proceeded to have sex with Dorer knowing that she did not wish to have sex with him, and he acted maliciously because the nonreciprocal sexual act was substantially certain to cause harm to Dorer."

In the present case, unlike *Moberg,* it was unclear whether Hainline would not have consented to sexual relations with Neal had she known of the previous adultery. The fact she continued to have sexual relations with him afterwards clearly shows that knowledge of his infidelity would not necessarily cause her to withdraw her consent. Nor was it clear at the time the disputed intercourse took place that Hainline would ever find out about his affair. Thus even if Neal's affair necessarily vitiated Hainline's consent, his continued sexual intercourse with his Hainline was not one which would necessarily cause her harm.

Further, to prevail in her tort action Hainline need not even show she was harmed. Hainline need only prove the sexual intercourse was either "unlawful, harmful **or** offensive." Thus, Hainline can prevail without proving that she was actually harmed, emotionally or otherwise by her sexual relationship with Neal.

It is thus concluded a verdict in Hainline's favor from the state court will not prove that Neal's action was malicious.

### B. Equitable Restitution

11 U.S.C. § 523(a)(5) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with state or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—. . . .; or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

11 U.S.C. § 523(a)(5) (West Supp.1994).

Like all other exceptions to discharge, analysis under section 523(a)(5) begins with the principle that discharge is favored under the Bankruptcy Code and the party asserting nondischargeability has the burden of demonstrating that the obligation at issue is actually in the nature of alimony, maintenance or support.

*Gard v. Gibson (In re Gibson),* 103 B.R. 218, 220 (9th Cir. BAP 1989).

■ Whether the judgment is alimony or child support is a question of federal law. *Shaver v. Shaver,* 736 F.2d 1314, 1315–16 (9th Cir.1984).

In *Shaver v. Shaver,* the Ninth Circuit Court of Appeals set forth a list of factors to be considered by a court in determining whether an award is in the nature of support:

In determining whether an obligation is intended for support of a former spouse, the court must look beyond the language of the decree to the intent of the parties and to the substance of the obligation. [citations omitted]. The courts that have considered this issue have used several factors to aid in the characterization of the debt. If an agreement fails to provide explicitly for spousal support, a court may presume that a so-called "property settlement" is intended for support when the circumstance of the case indicates that the recipient spouse needs support. *See Stout v. Prussel,* 691 F.2d 859, 861 (9th Cir. 1982). Factors indicating that support is necessary include the presence of minor children and an imbalance in the relative income of the parties. [citations omitted]. Similarly, if an obligation terminates on the death or remarriage of the recipient

spouse, a court may be inclined to classify the agreement as one for support. [citations omitted].... The court will look also to nature and duration of the obligation to determine whether it is intended as support. Support payments tend to mirror the recipient spouse's need for support. Thus, such payments are generally made directly to the recipient spouse and are paid in installments over a substantial period of time.

*Shaver v. Shaver,* 736 F.2d at 1316–17.

■ Where, as here, the award was made in a contested proceeding, the intent of the state court is highly relevant in determining the nature of the award. *Gionis v. Wayne (In re Gionis),* 170 B.R. 675, 682 (9th Cir. BAP 1994). "The bankruptcy court may look to state law in determining whether the state court intended to base the award on need." *In re Gionis,* 170 B.R. at 682 (citing *Gard v. Gibson (In re Gibson),* 103 B.R. 218, 220 (9th Cir. BAP 1989)).

■ Here the magistrate court awarded Hainline child support,[2] portions of the marital property and equitable restitution for her efforts in putting Neal through medical school.

In the divorce action Hainline alleged Neal made substantially more income per month then she did. She needed a portion of his income for her own support and for the support of their minor child. *See* Plaintiff's Exhibit 8 pages 5–6; and Plaintiff's Exhibit 20 pages 3–5. She also alleged she supported Neal during his medical schooling and that she was entitled to equitable restitution for such support. *See* Plaintiff's Exhibit 8 pages 6–7. At the trial held before the mag-

istrate court, the court heard evidence regarding Neal and Hainline's current incomes, Hainline's ability to support herself, the value of Neal's medical degree, and the financial burden imposed on Neal by his student loan obligations.[3] Hainline also submitted several affidavits to the court summarizing her attorney fees and costs. *See* Plaintiff's Exhibits 28–31.

On September 17, 1991, the magistrate court entered a judgement and decree of divorce. *See* Defendant's Exhibit 39. The magistrate judge ordered that Neal pay Hainline $600.00 per month in child support. *See* Defendant's Exhibit 39, pages 2–3. Hainline was also awarded the sum of $32,653.65 "as her portion of the reimbursement of the community for community resources [Neal] has used in acquiring his medical degree." *See* Defendant's Exhibit 39 pages 4–5.

In holding Hainline was entitled to equitable restitution but not alimony, the magistrate court made certain findings. First Neal's medical degree and the resultant earnings were not property of the marital estate. Second, because Hainline supported Neal during medical school she was clearly capable of supporting herself and therefore could not demonstrate she was unable to support herself as required by Idaho Code § 32–705(1)(b). *See* Plaintiff's Exhibit pages 3–5. The court then held that if one spouse gets the benefit of substantial of considerable expenditure of community funds the other spouse should get some portion of that expenditure but that Idaho's need based alimony structure prevents such an award. *Id.* page 5. The court then found equitable res-

---

2. The parties agree that the award of child support is nondischargeable.

3. *See* Plaintiff's Exhibit 22, pages 1–46 (testimony of Terry Ivey, a CPA regarding the economics of family medical practice and the value of a medical degree), pages 46–58 (testimony of Ivey regarding Neal's student loan obligations); Plaintiff's Exhibit 23, pages 1–9, 13–36 (testimony of Ivey regarding whether Neal's medical degree should be considered an asset of the marital estate), pages 36–46, 51–56 (testimony of Ivey regarding Neal's student loan obligations), pages 45–51, 57–562 (Ivey's testimony regarding the hypothetical value of the divorce estate assets if

Neal had not gone to medical school), pages 62–63 (Ivey's testimony regarding Hainline's earning capacity); Plaintiff's Exhibit 26 pages 189, 219 (Neal's testimony regarding his current income), pages 219–223, 273–274 (Neal's testimony regarding the couple's earnings while he was in medical school); Plaintiff's Exhibit 27, pages 510–511 (Hainline's testimony regarding her premarital finances) pages 517–522 (Hainline's testimony regarding her post separation finances), pages 527–528 (Hainline's testimony regarding her attorney fees), pages 529–548 (Hainline's testimony regarding the couple's finances during Neal's medical schooling).

titution was available under such circumstances. *Id.*

The award of equitable restitution was based upon Hainline's contribution to the parties' income during their marriage and not on the parties' post marriage financial needs. Further, the magistrate court was statutorily required to consider the following factors when determining that an award of alimony was not available:

(1) Where a divorce is decreed, the court may grant a maintenance order if finds that the spouse seeking maintenance:

 (a) Lacks sufficient property to provide for his or her reasonable needs; and

 (b) Is unable to support himself or herself through employment.

(2) The maintenance order shall be in such amounts and for such periods of time that the court deems just, after considering all relevant factors which may include:

 (a) The financial resources of the spouse seeking maintenance, including the marital property apportioned to said spouse, and said spouse's ability to meet his or her needs independently;

 (b) The time necessary to acquire sufficient education and training to enable the spouse seeking maintenance to find employment;

 (c) The duration of the marriage;

 (d) The age and the physical and emotional condition of the spouse seeking maintenance;

 (e) The ability of the spouse from whom maintenance is sought to meet his or her needs while meeting those of the spouse seeking maintenance;

 (f) the tax consequences to each spouse;

 (g) The fault of either party.

Idaho Code § 32–705.

On September 3, 1992, the magistrate court entered a memorandum of opinion stating he had considered the factors set forth in Idaho Code §§ 32–704 [4] and 32–705 and concluded that because the factual record was incomplete with regard to the parties' projected net income no attorney's fees could be awarded to Hainline.

Thus the magistrate court considered the parties' incomes and determined there was an insufficient difference in income to support the award of alimony or attorney's fees.

Neal appealed the magistrates determination. The issues on appeal were whether the magistrate court erred in (1) awarding Hainline $32,653.64 as equitable restitution; (2) awarding Hainline $7,899.17 in expert witness costs; (3) holding the parties have a duty to indemnify each other for loss sustained as a result of failing to pay the debts awarded to them; and (4) failing to award Hainline her attorney fees. *See* Plaintiff's Exhibit 34, page 1.

The district court held that equitable restitution was available to Hainline, but that the Magistrate court had erred in calculating the amount of the award. *See* Plaintiff's Exhibit 34 pages 6–9. Specifically the district court held the trial court erred in imputing Neal's salary into the award. *Id.* at page 7. Instead the district court held Hainline was entitled to one half of the amount of her salary which was used for the couple's living expenses and the entire amount of her contributions to Neal's direct educational expenses. *Id.* at page 8. The district court thus reduced the award of equitable restitution to $25,763.03.

The district court affirmed the award of expert witness costs on the grounds that Hainline was the prevailing party at trial. *See* Plaintiff's Exhibit, pages 9–11.

The district court found that the magistrate court had abused its discretion in failing to award attorney's fees to Hainline on the sole grounds she had failed to present evidence of Neal and Hainline's projected

---

4. *Idaho Code § 32–704(3) provides:*

 The court may from time to time after considering the financial resources of both parties and the factors set forth in section 32–705, Idaho Code, order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this act and for attorney's fees, including sums for legal services rendered and costs incurred prior or to the commencement of the proceeding or after entry of judgment. The court may order that the amount be paid directly to the attorney, who may enforce the order in his name. Idaho Code § 32–704(3).

future income. The court remanded the attorney's fee issue for further findings of fact. *See* Plaintiff's Exhibit pages 17. However, applying the same standard to be used by the magistrate court on remand the district court declined to award Hainline her attorney fees on appeal. *Id.* pages 18–19.

Applying the *Shaver* factors to the equitable restitution award it is noted the magistrate court determined Hainline could support herself and therefore did not need an award of alimony.

With regard to the other factors set forth in *In re Shaver:* (1) The award is payable in one lump sum. (2) It is based on Hainline's prior contributions not her current need. (3) It does not mirror the imbalance in the parties' income. (4) It will not terminate upon Neal's death. (5) The award is not conditioned on Hainline's marital status.

Although there is a minor child, the court did provide for maintenance of the child. The district court's refiguring of the equitable restitution award demonstrates the court intended the award to be based on the unfairness created by Hainline's supporting Neal through medical school, not on the disparity between the parties' incomes or on Hainline's need. Thus, all of the factors set forth in *Shaver* indicate that equitable restitution award is not in the nature of support.

However, outside the Ninth Circuit there are several bankruptcy decisions holding that awards to compensate one spouse for a professional degree earned during the marriage is in the nature of support. *See In re Raff,* 93 B.R. 41, 45 (Bankr.S.D.N.Y.1988) (award based upon present value of husband's medical degree and license which he obtained during marriage was in the nature of alimony); *In re Grasmann,* 156 B.R. 903 (Bankr. E.D.N.Y.1992) (award based upon present value of husband's medical degree is an award of alimony). However, unlike the award in the two New York bankruptcy cases cited by Hainline, the award in this case is based upon the amount contributed by the wife to her husband's education, not upon the present value of the husband's medical degree. If the award were based upon the value of Neal's degree, it would then serve to compensate Hainline for the dispari-

ty between Hainline and Neal's future earning capacity. The award at issue here is based upon Hainline's actual contribution to the marriage.

Further, in *In re Raff,* the state court considered the income of each party at the time of the divorce, the duration of the marriage and the health of both parties and the probable future financial circumstances of both parties in determining the amount of the award. *Id.* 93 B.R. at 47. These considerations mirror the factors set forth in *Shaver.* These are also the very factors the district court rejected when it adjusted the magistrate court's award.

Accordingly, the award of equitable restitution is not in the nature of support.

Hainline also contends the award of expert witness costs is support. However, as noted by the state district court, the award is based upon Hainline's prevailing in the action for equitable restitution, not on financial need. Accordingly this award is not in the nature of support.

Lastly, Hainline contends any attorney's fees the magistrate court awarded her on remand are in the nature of support. These fees have not yet been awarded. If fees are awarded pursuant to the factors set forth in Idaho Code §§ 32–705 and 32–704 then the fees would be in the nature of support.

This memorandum of decision shall constitute formal findings of fact and conclusions of law. Counsel for the defendant may prepare an appropriate form of judgment for signature.