
**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>RICHARD JACKIE FLOCO,<br>　　　　　　　Debtor. | BAP No.　AZ-21-1236-BSF<br><br>Bk. No.　2:18-bk-13482-MCW |
| RICHARD JACKIE FLOCO,<br>　　　　　　Appellant,<br>v.<br>DCF ENTERPRISES, INC.,<br>　　　　　　　Appellee. | Adv. No.　2:19-ap-00047-MCW<br><br>**MEMORANDUM***<br> |

Appeal from the United States Bankruptcy Court
for the District of Arizona
Madeleine C. Wanslee, Bankruptcy Judge, Presiding

Before: BRAND, SPRAKER, and FARIS, Bankruptcy Judges.

## INTRODUCTION

Appellant Richard Floco appeals a judgment determining that the debt owed to DCF Enterprises, Inc. ("DCF") was excepted from discharge under § 523(a)(4) [1] due to Floco's embezzlement of DCF's funds. Floco challenges both the embezzlement ruling and the amount of damages awarded. Seeing no reversible error by the bankruptcy court, we AFFIRM.

---

　　* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

　　[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

**FACTS**

## A.  Background of the parties and dispute

DCF is an Oklahoma corporation that promotes concerts and other events in Oklahoma. David Fitzgerald is the president of DCF. Protix.com, LLC ("Protix") was an Arizona limited liability company that was formed in 2009. Protix was a ticket agent in the business of selling tickets to the public for entertainment events held by others. Floco was an employee of, and consultant for, Protix since its inception in 2009. In 2014, Floco purchased another member's interest in Protix and took over as its managing member. Floco owned 65% of Protix; four other members owned the remaining 35%.

In May 2009, DCF and Protix entered into an agreement whereby Protix became the exclusive ticket seller for DCF's events. The agreement also provided that DCF would receive a small ownership interest in Protix, and Protix would invest money to expand the bathrooms at one of DCF's venues.

Protix sold event tickets for DCF which generated processing fees and other charges in addition to the base ticket price. Protix collected both the base price and the processing fees and other charges for each ticket sold. Protix's income consisted of a portion of the processing fees and other charges added to each ticket. Protix remitted the base price and remaining additional fees and charges to DCF, which DCF used to pay the expenses for the events.

Based on statements Floco made to him over their years of doing business together, Fitzgerald understood that ticketing money collected by Protix was kept in a separate account earning 4% interest until it was remitted

2

to DCF. Floco denied telling Fitzgerald that the money Protix collected for DCF would be held in a separate account when they first met in 2009. However, Floco admitted he may have told that to Fitzgerald later. Contrary to Fitzgerald's understanding, the ticketing money Protix collected went into a general operations fund and was used for day-to-day operations. If Floco had told Fitzgerald that the funds were not segregated, DCF would not have done business with Protix.

The relationship between Protix and DCF soured in late 2017. Until October 2017, DCF and Protix usually settled-up event ticket sales after the event occurred. Protix provided settlement statements to DCF, followed by payments to DCF. Floco testified that Protix regularly settled past shows with DCF (and other clients) by using funds from future event sales and that this way of doing business was common in the industry. It was, as he put it, the "nature of the beast."

In September 2017, Fitzgerald expressed concern to a Protix employee that Protix might not have the ticketing money to pay DCF. Consequently, on October 16, 2017, DCF changed the settlement procedure for shows at one of its venues and required Protix to pay DCF for ticket sales on a weekly basis – prior to the date the event took place. Floco explained to Fitzgerald the difficulty with weekly settlements but indicated that the funds Protix owed DCF were there, even though he conceded that Protix occasionally "floated" funds, meaning that it used cash from future ticket sales to pay clients for past events. During this time, Floco repeatedly failed to correct Fitzgerald's

3

impression that the funds were in a segregated account. He further asserted in an email to Fitzgerald that Protix had DCF's money, but this was false: Protix had far less in its account than what was owed to DCF at the time. Floco conceded at trial that he lied when he told Fitzgerald that DCF's funds were there.

Earlier, in August 2017, Floco met with Marshall Pred, a representative of Etix, a ticketing software company, to discuss a transition from Protix's current software company to Etix. The Etix deal would pay DCF and Protix $800,000 to buy Protix, and Etix would serve as the exclusive ticket seller for DCF and R Entertainment (Floco's affiliate). Floco told Fitzgerald that Protix would use the cash it received from the Etix deal to repay debt owed to DCF and to fund the agreed bathroom project. Fitzgerald told Floco that he was not interested in Floco negotiating ticketing deals for DCF and declined the proposed Etix deal.

Shortly after changing the settling-up procedure, DCF terminated its relationship with Protix and its ownership interest in Protix. Without DCF ticket sales, Protix lost its major revenue stream. In response, Floco acknowledged the debt Protix owed to DCF and asserted that Protix "has a financial obligation and will pay the funds at settlement."

During this time, Floco attempted to settle DCF's account documenting it as a "credit memo" on the amount owed. On October 27, 2017, Fitzgerald sent an email to Floco (the "October 27 email") informing him that the plan to issue DCF credit memos was illegal, and that the base price of every ticket Protix

4

sold was neither Protix's nor DCF's money; it was "the public's money which is meant to go directly to the artist/second party" to the DCF contract.

Protix did not pay DCF for any ticket sales after October 21, 2017. DCF had to pay the bands and all other outstanding event expenses out of pocket.

Around this time, DCF entered into a separate agreement with Etix. In exchange for serving as the exclusive ticketing agent for DCF, Etix paid DCF a signing bonus of $750,000 and provided DCF a $500,000 loan. Fitzgerald testified that he was not privy to the earlier deal Floco had arranged with Etix when he (Fitzgerald) decided to contact Pred in late September 2017 to discuss DCF switching to Etix.

On November 3, 2017, Protix prepared a settlement statement reflecting that it owed DCF $477,863.70 in ticketing money which Protix had collected but not remitted to DCF. Floco proposed putting together a payment plan to pay DCF its outstanding debt, which Fitzgerald said he would consider, but no agreement was reached.

DCF filed suit against Protix and Floco in Oklahoma state court, alleging that Protix and Floco had embezzled over $400,000 in ticketing money belonging to DCF. Protix and Floco filed an answer, counterclaim, and third-party claim in that proceeding.

## B.    Protix's bankruptcy case

On July 16, 2018, Protix filed a chapter 7 bankruptcy case. DCF filed a $399,113 proof of claim. During the case, the bankruptcy court approved an unopposed compromise between DCF and the Protix chapter 7 trustee. The

compromise settled the remaining counterclaim from the Oklahoma proceeding asserted by Protix against DCF in exchange for DCF withdrawing its claim in the Protix bankruptcy case. The settlement expressly allowed DCF to prosecute and recover on its claims against Floco. The Protix chapter 7 case was fully administered and closed on June 11, 2019.

## C.     Floco's bankruptcy case and the § 523 complaint

Floco filed his chapter 7 bankruptcy case on November 7, 2018. DCF timely filed a complaint alleging that the debt owed to DCF was excepted from discharge under § 523(a)(4) based on Floco's embezzlement.

On cross-motions for summary judgment, DCF argued that it was entitled to summary judgment on its embezzlement claim against Floco because: (1) Protix held DCF's tickets and sale proceeds as a consignee of DCF; (2) Floco, as managing member of Protix and the one responsible for its misconduct, improperly used DCF's proceeds to operate Protix and to pay his personal expenses; (3) Floco falsely told DCF that Protix was holding the proceeds in a separate, interest-bearing account and would remit them to DCF; and (4) Protix had been using ticket proceeds from future shows to settle current show obligations. Alternatively, DCF argued that a consignment relationship was not necessary to prove its embezzlement claim against Floco; the elements for embezzlement were met without one.

Floco argued that DCF's embezzlement claim failed for two reasons. First, there was no consignment relationship between Protix and DCF, but even if there was, he argued, Protix took the ticket proceeds as owner. Second,

6

even assuming DCF and Protix were in a consignment relationship and that DCF owned the tickets and sale proceeds, DCF's claim still failed because Protix was not required to segregate the proceeds and could use the funds for operations. Consequently, argued Floco, this made DCF an unpaid creditor, not a victim of embezzlement.

In granting DCF summary judgment in part and denying summary judgment to Floco, the bankruptcy court held that the issue of whether DCF or Protix owned the tickets was disputed and a key factual element for the consignment determination. Thus, a trial was necessary on the issues of whether the parties intended a true consignment relationship and, as part of that determination, which party owned the tickets.

After trial, the bankruptcy court entered an order and a corresponding judgment determining that the $477,863.70 debt owed to DCF was excepted from Floco's discharge under § 523(a)(4) for embezzlement. Floco timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1.    Did the bankruptcy court err in determining that the debt owed to DCF was for embezzlement and excepted from Floco's discharge under § 523(a)(4)?

2.    Did the bankruptcy court err in its award of damages?

## STANDARDS OF REVIEW

In reviewing a bankruptcy court's dischargeability determination, we review its findings of fact for clear error and its conclusions of law de novo. *Oney v. Weinberg (In re Weinberg),* 410 B.R. 19, 28 (9th Cir. BAP 2009), *aff'd,* 407 F. App'x 176 (9th Cir. 2010). The clear error standard applies to the bankruptcy court's factual findings on the debtor's intent. *See Beauchamp v. Hoose (In re Beauchamp),* 236 B.R. 727, 729 (9th Cir. BAP 1999), *aff'd,* 5 F. App'x 743 (9th Cir. 2001). Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz),* 606 F.3d 1189, 1196 (9th Cir. 2010). A finding of fact is not clearly erroneous if a permissible view of the evidence supports the finding. *SEC v. Rubera,* 350 F.3d 1084, 1093-94 (9th Cir. 2003). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis),* 505 B.R. 914, 917 (9th Cir. BAP 2014).

## DISCUSSION

**A.    The bankruptcy court did not err in determining that the debt owed to DCF was for embezzlement and excepted from Floco's discharge under § 523(a)(4).**

Section 523 excepts from discharge debts incurred as a result of embezzlement or larceny. § 523(a)(4). Embezzlement in the context of nondischargeability requires three elements: (1) property rightfully in the possession of a nonowner; (2) the nonowner's appropriation of the property to a use other than which it was entrusted; and (3) circumstances indicating fraud. *Transamerica Com. Fin. Corp. v. Littleton (In re Littleton),* 942 F.2d 551, 555

(9th Cir. 1991). Embezzlement under § 523(a)(4) does not require the presence of a fiduciary or express trust relationship. *See id.*

The bankruptcy court found that Protix did not own the tickets but, at best, was DCF's agent. Specifically, the court found that Protix did not receive an ownership interest in the tickets when DCF electronically transmitted the ticket information, allowing Protix to use its software to sell tickets for DCF events to the public. The court also found that the relationship between DCF and Protix, even absent a contract or other written document labeling it as such, was a true consignment relationship. DCF, as consignor or owner of the tickets, delivered the goods (in the form of information to create the tickets for DCF events) to Protix, as consignee, with the understanding that Protix would input that information into its ticketing software, sell tickets for DCF events to the public on behalf of DCF, collect the appropriate sale proceeds, subtract any fee owing to Protix, and pay over the proceeds to DCF.

Alternatively, the bankruptcy court determined that even absent a true consignment relationship, DCF established embezzlement. Except for the portion of the processing fees and other charges that Protix was entitled to receive for providing its services to DCF, Protix did not own the ticket sale proceeds, and Protix and Floco knew that the proceeds belonged to DCF. Protix was entrusted to hold these proceeds which would have to be paid to DCF. The court found that Protix and Floco's use of DCF's funds to pay Floco's personal expenses and Protix's operational expenses was a misappropriation of the funds for a purpose other than which they were entrusted. And by Floco

9

directing the misappropriation or using the funds that he knew belonged to DCF to pay Protix's operating expenses and his personal expenses, Floco's use of the funds amounted to circumstances indicating fraud.

1. **The bankruptcy court did not err in determining that a consignment relationship existed between DCF and Protix.**

Floco takes issue with the bankruptcy court's factual findings supporting its determination that a true consignment relationship existed between DCF and Protix. The parties agree that *In re Aaura, Inc.,* No. 06 B 01853, 2006 WL 2568048, at *3 (Bankr. N.D. Ill. Sept. 1, 2006), sets forth the proper factors for determining whether the parties intended a true consignment. They include: (1) the consignor sets the price of the goods; (2) the consignee is only able to sell at that price; (3) the consignor may recall the goods; (4) the consignee receives a commission instead of profit from the sale; (5) the consigned property is segregated from the consignee's other property; (6) the consignor is able to inspect the consignee's records and inventory; and (7) the consignee has no obligation to pay for the goods unless they are sold. *Id.*

Carefully considering these factors, the bankruptcy court found that each supported a finding of a true consignment relationship between DCF and Protix. Nonetheless, Floco argues that several facts in the record demonstrated that no such relationship existed. First, Floco argues that Fitzgerald admitted in his October 27 email that ticket sale proceeds belonged to the artists, and not DCF. When questioned about this at trial, Fitzgerald explained that he said it was the artists' money because he used this money to pay the artists and all other expenses. Fitzgerald testified that the artist does not own the tickets, the

10

promoter does. The bankruptcy court considered and rejected Floco's argument on this issue. In its view, Fitzgerald's October 27 email did not establish that DCF did not own the ticket sale proceeds. Further, the court was free to weigh all of the evidence on this issue, not just one email, to conclude that DCF owned the tickets and sale proceeds. This finding was not clearly erroneous.

Floco next argues that a consignment relationship did not exist between DCF and Protix because consignment tickets are a different ticket type than the normal and customary ticket type, and Protix sold actual consignment tickets through its business arrangement with DCF. Although the bankruptcy court did not address this and neither does DCF, we disagree with Floco. While a "consignment ticket" is a term of art in the ticketing industry and consists of a special type of ticket sale arrangement, the fact DCF sold such tickets through Protix does not mean that the parties' dealings otherwise did not create a true consignment relationship under the law, even absent a contract stating so.

Next, Floco argues that a consignment relationship did not exist between DCF and Protix because Protix controlled all inventory. This is contrary to the record. Protix's website expressly stated that Protix did not control ticket inventory or availability. Further, Fitzgerald testified that DCF controlled the inventory for how many tickets could be sold for each event.

Lastly, Floco argues that a consignment relationship did not exist between DCF and Protix because DCF had no ability to cancel shows and thereby recall the tickets on sale through Protix; only the artist could do so.

11

While one Protix employee did testify that DCF could not cancel a show without the artist's permission, another Protix employee testified that either the promoter or the artist could cancel a show, and Fitzgerald testified that, as promoter, DCF had the ability to cancel a show in the case of an accident or illness, inclement weather, or poor ticket sales. Finally, according to Protix's website, cancellations and rescheduling were decisions made by the artists and promoters, and Protix did not take any part in those decisions. Accordingly, the record supports the bankruptcy court's finding that DCF had the right to recall tickets.

Floco fails to acknowledge that the bankruptcy court alternatively found that, absent a true consignment relationship, DCF still established a claim for embezzlement. Thus, Floco's unsupported argument, that the bankruptcy court committed reversible error by focusing solely on whether the parties had a consignment relationship, is wrong.

### 2. The bankruptcy court did not err in determining that Floco possessed the requisite fraudulent intent for embezzlement.

Floco argues there was insufficient evidence for the bankruptcy court to find that he acted with fraudulent intent. The question of whether Floco intended to defraud is a question of fact. Citing *Littleton*, Floco argues that he lacked any fraudulent intent because he acted with the intent to benefit Protix.

In *Littleton*, the Ninth Circuit Court of Appeals held that the BAP did not clearly err in holding that the debtors did not act with the intent to defraud the creditor, given the bankruptcy court's finding that the debtors' actions and dominant motivation was to keep their business afloat. 942 F.2d at 556. Floco

argues that the evidence at trial demonstrated that he acted with the same intent as the debtors in *Littleton* – not to defraud but to keep Protix afloat and satisfy its obligations. Floco cites in support of his argument testimony from a Protix employee that she believed Floco wanted to, and was trying to, pay Protix's debts.

*Littleton* is not applicable here. In that case, "[t]here was no evidence that the debtors used any of the corporate funds for their personal benefit, and there [was] no evidence that any other creditor was paid other than in the ordinary course of business in the month before bankruptcy was filed." *Borg-Warner Acceptance Corp. v. Littleton (In re Littleton)*, 106 B.R. 632, 638-39 (9th Cir. BAP 1989), *aff'd*, 942 F.2d 551 (9th Cir. 1991). Here, Floco admitted to using DCF's ticket sale proceeds to pay personal expenses, and as the bankruptcy court found, there was no allegation that he used these funds for that purpose in an attempt to benefit Protix. In addition, Floco's use of DCF's funds to make payments to a former Protix member for Floco's ownership interest in Protix, and to start a new business for himself, conferred nothing other than a personal benefit on Floco at the expense of Protix.

Floco also argues that he had no duty to segregate DCF's funds, which he argues supports a finding of no intent to embezzle. As the bankruptcy court found, embezzlement does not always require a pre-existing obligation to keep the funds in a separate account. *See First Del. Life Ins. Co. v. Wada (In re Wada)*, 210 B.R. 572, 576 (9th Cir. BAP 1997) (citing *In re Littleton*, 942 F.2d at 555). Floco's argument also ignores the bankruptcy court's finding that, even if there

13

was no duty to segregate the ticket sale proceeds, Floco repeatedly and falsely told Fitzgerald and Protix employees that funds generated from ticket sales were being held in a separate account that earned 4% interest. Floco knew that he promised DCF that its collected ticketing money would be kept separate from Protix's operational account, which explains why he lied about the existence of the separate account and told Fitzgerald that DCF's money was in the account ready to be turned over. Given Floco's representations about the so-called separate account, the bankruptcy court found that it made little sense for DCF to demand that ticket sale proceeds be segregated. Thus, this was one of the situations where embezzlement did not require the pre-existing obligation to keep the funds in a separate account. We see no error in the court's determination.

The bankruptcy court had ample evidence of Floco's fraudulent intent, and we conclude that its finding that the circumstances here indicated fraud is not clearly erroneous.

**B.    The bankruptcy court did not err in its award of damages.**

The bankruptcy court awarded DCF $477,863.70 in damages. Floco argues that the bankruptcy court erred by not considering DCF's usurpation of the $800,000 business deal he arranged with Etix that would have made DCF whole. In other words, Floco argues that the $800,000 Protix allegedly lost as a result of DCF's subsequent deal with Etix should offset the loss DCF suffered due to Floco's embezzlement. The bankruptcy court did not address this directly.

14

When counsel for DCF objected to testimony about the subsequent deal between DCF and Etix on relevance grounds, the bankruptcy court overruled the objection and allowed the testimony, stating that it would see how relevant the testimony was and how much weight to give it. Given that the court entered judgment in favor of DCF with no offset for any alleged damages incurred by Protix, it apparently did not give Floco's argument that "DCF usurped his business deal" much weight. In any event, any alleged loss claim over the Etix deal with DCF belonged to Protix, not Floco. And as DCF points out, that was the counterclaim Protix asserted in the Oklahoma litigation, which was settled by the Protix chapter 7 trustee. Thus, we fail to see how Floco could assert this claim as a means to offset his liability. In addition, none of the funds DCF received from Etix were intended to pay for any shortage Protix owed DCF. DCF had to cover the lost ticket sale proceeds Protix failed to remit with cash on hand and loans.

Floco argues that, at minimum, the damages awarded to DCF should be reduced to $399,113, which is the amount DCF asserted it was owed in its proof of claim filed in the Protix bankruptcy case. That figure takes into account a $78,750.70 bathroom credit that DCF was willing to give to Protix. Floco asks that we take judicial notice of the proof of claim, which was known to Floco but not presented as part of the trial record, as proof that DCF's damages from Floco's embezzlement were limited to this amount.

We exercise our discretion to take judicial notice of the proof of claim, but this does not prove that DCF's damages were, or should be, limited to

$399,113. First, DCF withdrew its $399,113 claim as part of the settlement with the Protix chapter 7 trustee. Second, and more importantly, the evidence at trial established that the amount of funds embezzled was $477,863.70. The primary exhibit DCF offered at trial to establish its damages was the November 3, 2017 settlement statement prepared by Protix, reflecting that it owed DCF $477,863.70 in ticketing money. Further, Floco's counsel acknowledged at trial that DCF was seeking "approximately $477,000" in damages and Floco did not object to that figure, other than to say that it should be offset by DCF's usurpation of the Etix deal.

Floco seems to assert that he should get an offset equal to the $78,750.70 bathroom credit. Though it was DCF's burden to prove its damages, it was Floco's burden to prove that he was entitled to any offset of those damages by the bathroom credit. *See Banks v. Gill Distrib. Ctrs. (In re Banks)*, 263 F.3d 862, 870 (9th Cir. 2001) (prevailing plaintiff under § 523(a)(4) must prove damages on account of the embezzlement); *see also C.B. v. City of Sonora*, 769 F.3d 1005, 1032 (9th Cir. 2014) (en banc) (defendant seeking an offset against a money judgment has the burden of proving the offset). Counsel conceded at oral argument that the potential $78,750.70 offset for the bathroom credit was not argued before the bankruptcy court. Therefore, this argument has been waived. *Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318, 1322 (9th Cir. 2012) (an argument is generally deemed waived on appeal if it was not raised sufficiently for the trial court to rule on it).

In summary, the bankruptcy court considered the evidence before it on

16

damages and found that $477,863.70 was the proper amount. Nothing about its finding is illogical, implausible, or without support in the record.

## CONCLUSION

For the reasons stated above, we AFFIRM.